### CLAIM OF MODIFICATION IN ORIGINAL CONTRACT.

Circuit Court of Cuyahoga County.

THE FINDLAY BROTHERS COMPANY v. L. W. EISER.

Decided, May 8, 1911.

*Charge—Burden of Proof in Suit on Contract.*

When plaintiff sues upon a contract and defendant answers that the terms of the original contract had been modified by a new contract entered into between the parties, it is error to charge: "It is claimed here by the defendant that a new contract was entered into between the parties, modifying the old one in a certain particular. The burden upon that subject, gentlemen of the jury, is upon the defendant."

*H. A. Couse*, for plaintiff in error.
*Albert Mendelsohn* and *Theodore L. Strimple*, contra.

HENRY, J.; JONES, J., and DUSTIN, J. (sitting in places of Judges Winch and Marvin), concur.

Eiser sued the Findlay Brothers Company for balance due as traveling salesman under contracts dated August 1, 1906, and

March 20, 1907. Under the first contract covering the period from September 1, 1906, to March 1, 1907, he was to have "10% commission on the net proceeds of his sales, as per ledger footings." Under the second contract covering the period from July 1, 1907, to July 1, 1908, he was to have "$1,000 per year, to be paid monthly, and 2% commission on all goods sold" by him and shipped by his employer. Shortly after the date of his first contract he was given certain written instructions, providing, among other things, three sets of prices. The "A" price, to be quoted to those dealers who were "A1 pay and can buy at least $2,000 worth of goods during the season;" the "B" price might be quoted to any dealer buying outright at least $500 worth of goods, and the "C" price might be quoted to anyone, being "the price which the majority of our goods should be sold at."

These instructions further provided that on goods sold at the "A" price "we can not afford to pay but one-half the regular commission to you." On August 31st of the following year, Eiser was given a copy of another document likewise entitled "Instructions to Salesmen." As therein revised the corresponding provisions were: "The A price, which is about our cost price, is to allowed on $2,000 orders taken from good parties only; the B price for orders of $500 or over, to well rated parties; and the C price is the road price at which the majority of the goods should be sold;" and "one-half of regular commission will be allowed on goods sold at A price."

Eiser testifies that when the instructions to salesmen were first handed to him, he was told that many of the provisions thereof did not apply to him. This is denied, and the denial is supported by a letter of October 31, 1906, written to Eiser by his employer, and containing the following clause: "Your goods are almost all sold at the A price and if you will refer to your letter of instructions, you are only entitled to 5% on goods sold at the A price."

The answer and cross-petition of the Findlay Brothers Company alleges a modification of the original contract in accordance with said instructions to salesmen so as to provide for half commissions on sales at the "A" price. The reply denies

such modification. There is no direct evidence of Eiser's express consent thereto, except this paragraph in Eiser's letter of February 5, 1907, to his employer:

"Enclosed find a small order for Schmipf 'I have been carrying in my pockets for sometime, on account of making error in price of 460 pattern.' I expected to see him shortly to explain the error and try to get larger order. You will also note I gave A price on your goods, as that is about price York sells him at. They generally get bulk of his business. I intended to tear up order if I did not see him as there is nothing in it for your-self or me. It may however help for next season."

True, Eiser makes frequent apologetic references in his letters to his selling so many goods at the "A" price but he nowhere else makes any reference which can be construed as bearing upon the size of his commissions on goods sold at that price. Even the paragraph quoted above from his letter, is by no means a conclusive reference to the percentage of his commission, for it may refer only to the unprofitableness of his 10% commission on so small an order.

The numerous misunderstandings disclosed in his letters regarding his alleged overdrafts and the balance due for commissions are likewise inconclusive, because, without a detailed statement he could never know how many of the orders sent in by him were filled. In fact, only about 75% of his orders appear to have been filled during the year and a half of his employment. When detailed statements were finally furnished Eiser by his employer, they did clearly discriminate the one-half commissions on goods sold at the "A" price from full commissions on goods sold at the "B" and "C" prices. But it appears that he never expressly assented to these statements of account as rendered by his employer.

On the whole, we can not reverse the judgment below upon the weight of the evidence; nor, for a like reason, do we think the court erred in refusing to permit the defendant on the trial to amend its answer and cross-petition by setting up an account or accounts stated. The comments made by plaintiff's counsel in argument to the jury upon this attempt by the defendants to shift their ground is not objectionable for counsel expressly

disclaimed any significance in the court's refusal to allow such amendment as bearing upon the merits of the case.

The charge of the court is complained of in several parts.

First.   At page 96 the court said:

·   "I suggest that you first ascertain what, if anything, is due the plaintiff under these contracts, then ascertain what, if anything, is due the defendant under its counter-claim, and strike a difference, and in whose favor your difference is, so will be your verdict."

Inasmuch as the plaintiff had been either underpaid or overpaid, according as his view of the contracts or the view of the defendant should prevail, it is claimed that the charge was misleading in allowing the jury to suppose that there could be a recovery on both petition and cross-petition at the same time. We have not made any nice computations to see what the situation would be if the plaintiff were right as to his view of the first contract and wrong as to the second.   Suffice it to say, we are not prepared to reverse the judgment because of the alleged error in this part of the charge.

At page 92, the court, speaking of the defendant's claim that the original agreements had been modified, charged the jury that: "the respect in which it is claimed they were modified was with reference to the percentage under the written contract he was entitled to."   The main issue in the case was whether the written contracts were modified, not as to all commissions, but merely as to commissions on goods sold at the "A" price; and the court nowhere clearly stated this to the jury.   We think, however, that in the absence of a request, the charge was not erroneous for failing further to particularize the issues.

At page 94, the court charged:

"The plaintiff was entitled to rely on the rates of commission named in his written contracts with the defendant company until he had consented to a change therein; and was not warranted in assuming that the defendant company did not intend to carry out the terms of its contracts in writing by reason of the defendant company's statements of sales, under the classification of sales at A price, B price and C price."

The court evidently intended to refer to the instructions for salesman on the subject of half commissions on "A" price sales, and we think the jury must so have understood the language employed.  But whether the jury understood the court's reference to be to the instructions to salesman given to Eiser, or to the statements of his accounts that were rendered to him, it was misleading to charge that Eiser was not warranted in assuming that the defendant company did not intend what those documents imported.  The question for the jury was, did Eiser's language or conduct import his acceptance of the modified terms of commission on "A" price sales?

On page 97, the court charged, by request of Eiser's counsel:

"It is claimed here by the defendant that a new contract was entered into between the parties, modifying the old one in a certain particular.  The burden upon that subject, gentlemen of the jury, is upon the defendant."

The first paragraph of the syllabus in the case of *The List & Son Company* v. *Chase*, 80 Ohio St., 42, is as follows:

"Where a plaintiff sets forth in his petition a contract with the defendant, and avers that he has performed all of the conditions on his part, and the defendant for answer denies the allegations of the petition and alleges a contract differing in material conditions from that alleged by the plaintiff, the burden remains with the plaintiff to prove the contract and his performance as alleged in his petition; and it is error for the court to charge the jury that as to the claim made in the defendant's answer the burden is on the defendant, and that the contract as alleged in the answer and denied in the reply must be made out by a preponderance of the evidence."

The rule thus laid down by the Supreme Court is inconsistent with the charge, as given.

For these two errors in the charge, namely, as to the significance of the documents given to Eiser by his employer, and as to the burden of proof of modification of the contract, the judgment below is reversed and the cause remanded.